## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| **TOTAL RECON AUTO CENTER, LLC**<br>627 Southlawn Lane<br>Rockville, Maryland 20850 | :<br>:<br>:     Civil Case No.:_____ |
| Plaintiff, | :<br>: |
| v. | :<br>: |
| **STATE FARM INSURANCE**<br>One State Farm Plaza<br>Bloomington, Illinois 61710 | :<br>:<br>:<br>: |
| SERVE:<br>Kathleen A. Birrane, Commissioner,<br>Maryland Insurance Administration, Resident Agent:<br>200 St. Paul Place, Suite 2700<br>Baltimore, Maryland 21202 | :<br>:<br>:<br>:<br>: |
| Defendant. | :<br>: |

## COMPLAINT

Plaintiff, Total Recon Auto Center, LLC ("Total Recon"), by and through its attorneys, Eduardo S. Garcia, Flora K. Lee, and Stein Sperling Bennett De Jong Driscoll PC, hereby sues and demands judgment against Defendant, State Farm Insurance ("State Farm"):

### INTRODUCTION

This lawsuit results from State Farm's intentional, malicious campaign to harm Total Recon, a premier independent collision repair shop that prides itself on providing its customers with proper, highest-quality repair services for Tesla, Inc. ("Tesla") vehicles, free from influence of insurance carriers. Despite receiving multiple notices to cease and desist its improper, actionable conduct towards Total Recon, State Farm has continued to deliberately disseminate harmful misinformation to its insureds who are actual or potential customers of Total Recon and

20108748_5

improperly "steering" them away from Total Recon, in violation of the Maryland Insurance Act (the "Act"). As a direct result of State Farm's intentional and malicious tortious conduct, Total Recon's existing relationships with current customers and prospective customers have been harmed. Through this action, Total Recon seeks judicial intervention and necessary relief against State Farm for tortious interference and defamation.

PARTIES

1.      Total Recon is a Maryland limited liability company with its principal place of business in Montgomery County, Maryland.

2.      State Farm is an Illinois corporation with its principal place of business in Illinois. State Farm conducts business in the State of Maryland, including in Montgomery County.

JURISDICTION & VENUE

3.      Subject matter jurisdiction is proper in this Court pursuant to Md. Code, *Cts. & Jud. Proc.* § 1-501.

4.      Personal jurisdiction is proper in this Court pursuant to Md. Code, *Cts. & Jud. Proc.* § 6-103.

5.      Venue is proper in this Court pursuant to Md. Code, *Cts. & Jud. Proc.* § 6-201.

FACTS

*Operations of Total Recon as an independent TACC*

6.      Total Recon is one of the few independent collision centers in Montgomery County—i.e., it does not work through any insurance company's so-called Direct Repair Program or other referral agreements, all of which allow insurance companies to dictate how a vehicle is repaired, not necessarily with the best interest of their insureds in mind. As an independent collision center, Total Recon works solely in the best interest of its customers, refusing to cut any

2

corners, implement merely "band-aid" solutions, or use suboptimal or secondary market parts solely to save money for the insurance companies who are paying the bills.

7.      Total Recon is also one of only three (3) TACCs in Montgomery County and one of only eight (8) TACCs in the State of Maryland. Additionally, Total Recon is the largest and highest reviewed TACC in the country.

8.      As a TACC, Total Recon's technicians are Tesla trained, evaluated, and certified, and Total Recon uses certified, original Tesla parts and equipment, as well as proprietary, high-security[1] Tesla technology to diagnose repair issues and to calibrate and evaluate repairs. Since Tesla vehicles are semi-autonomous and rely on a network of sensors that require calibration to function properly, precision and quality are of heightened importance. Failure to appropriately calibrate and/or failure to follow OEM procedures can have fatal consequences.

9.      The quality of Total Recon's work is actively and electronically monitored by Tesla. To maintain the TACC certification, strict adherence with Tesla's policies is required.

10.      As a TACC, Total Recon charges a specific hourly labor rate—no more or no less—determined by Tesla to be reasonable for a given geographic or trade area. This rate for labor for body and refinish work is Sixty Dollars ($60.00) in the DC Metropolitan area ("Tesla Labor Rate"). The Tesla Labor Rate—although quite low compared to other regions in the country—is marginally higher than the area's more typical hourly labor rate (for body and refinish work) of Fifty Dollars ($50.00) for all other types of collision centers/repair shops and is widely considered to be reasonable.

11.      Insurance companies, including State Farm, have always charged their insureds a substantially higher premium to insure a Tesla compared to other similarly categorized gas

---

[1] The Tesla technology is accessible only via an IP address originating from the physical premises of Total Recon and other TACCs.

powered vehicles. Insurance companies benefit when their Tesla-insureds use non-TACC repair shops, which charge insurance companies lower fees and agree to take shortcuts that are inconsistent with OEM standards compared to TACCs, or TACCs that have been pressured by insurance companies into lowering their fees from the rates determined by Tesla for given geographical areas.

12.     When Total Recon made it clear to insurance companies that it would stay firm on demanding the Tesla Labor Rate that it is entitled to, State Farm, like other insurance companies, resisted but eventually agreed to pay the Tesla Labor Rate to Total Recon, so that State Farm insureds who come to Total Recon would not have to pay out pocket the difference between the "covered" rate that State Farm deems reimbursable and the Tesla Labor Rate.

<em>State Farm's Initial Intentional Campaign Against Total Recon</em>

13.     Ultimately however, State Farm decided to launch an intentional campaign to harm Total Recon , including deliberately disseminating harmful misinformation to its insureds who are actual or potential customers of Total Recon and improperly "steering" them away from Total Recon.

14.     By way of illustration, State Farm started informing Total Recon's current and prospective customers that "this shop does charge out of pocket expenses," that it is "out of our network," and that "if you choose a shop in our network it is guaranteed not to have any out of pocket costs stemming from this claim." These statements were knowingly false, as (a) State Farm had agreed that it would pay the Tesla Labor Rate to Total Recon so that there would be no out-of-pocket costs associated with Total Recon's customers and (b) there is no such thing as an "out of network" repair shop in the auto insurance industry in Maryland, where customers are allowed to choose the repair shop that they prefer for appropriate repairs.

15. In fact, there is no history of Total Recon charging out of pocket expenses to State Farm's customers. To the contrary, Total Recon has a history of working with State Farm through negotiations and concessions in order to make sure that it does not have to charge State Farm's customers any out of pocket expenses.

16. Actual and potential costumers of Total Recon who have received these intentional misrepresentations or falsehoods by State Farm include, but are not limited to:

(a) Nelson Sanabria, who became concerned about having to pay out-of-pocket expenses at Total Recon as a result of intentional misrepresentations by State Farm and decided to not utilize Total Recon;

(b) Tash Gohlke (Claim Nos. 2045S3-24B01 and 20-45S3-19L01), who was highly concerned that Total Recon's repair plan would not be in line with State Farm's and sought assurances before dropping off her vehicle that she would not be liable for any out-of-pocket expenses by utilizing Total Recon;

(c) Inder Chawla (Claim Nos. 20-47F398T and 20-48B8-36S01), who was informed by State Farm, once she communicated to State Farm that she was choosing Total Recon, that Total Recon charges out-of-pocket expenses;

(d) Raymond Irizarry, who, before ultimately deciding to use Total Recon, was informed by State Farm that Total Recon charges out-of-pocket expenses, that Total Recon is not on State Farm's "preferred list," and that he should go to International Collision Center, which is a discount version of Total Recon and located down the street from Total Recon;

(e) David Dochter, who formed an agreement with Total Recon but rescinded after speaking with State Farm, which informed him that he could not use Total Recon;

5

that utilizing Total Recon will require a separate and longer approval process; and that he had to use one of the shops that State Farm used more often or frequently, and recommended a specific shop to him;

(f) Caroline Mosher (Claim No. 46-49R8-79C), who, on May 17, 2023, cancelled her appointment at Total Recon scheduled for May 19, 2023 after speaking with State Farm, due to "issues with [S]tate [F]arm" regarding utilizing Total Recon; and

(g) Ethan Karaus (Claim No. 09-49V547J), an existing customer of Total Recon who, on May 23, 2023, emailed Total Recon stating "I just got a call from State Farm giving me a heads up that, since you guys aren't in their network of repair shops, there was a possibility that they may not cover the full cost of repairs. Could you talk to State Farm and then tell me about any charges that won't be covered before you do any work?"

17. State Farm's communication of the above-referenced misrepresentations and falsehoods are intentional and improperly designed to divert customers away from Total Recon.

18. As a result of the above-referenced intentional conduct by State Farm, Total Recon has suffered and continues to suffer significant damages including, but not limited to, lost profits and harm to its reputation.

### State Farm's Intentional Actions Violate the Act

19. The above-referenced intentional conduct by State Farm is independently improper in that it violates the Act, which provides, *inter alia*, that "[a]n adjuster, appraiser, or insurance producer or employee of an insurer" may not:

(1) recommend the use of a specific repair service or source for the repair or replacement of property damage to a motor vehicle without informing the claimant or insured that the claimant or insured does not have to use the recommended repair service or source;

6

(2)    require that an appraisal or repair be made in a specific repair shop;

(3)    require that a claimant or insured use a specific contractor or repair shop for a repair service or repair product; or

(4)    intimidate, coerce, or threaten a claimant or insured to use a specific contractor or repair shop for a repair service or repair product.

Md. Code Ann., Ins. § 10-503.

20.    The Act further contains a catch-all provision prohibiting all other "unfair or deceptive act or practice" not otherwise specified in the Act. *Id.* § 27-104.

21.    State provisions such as Md. Code Ann., Ins. § 10-503 are intended to protect against various tactics commonly referred to as "steering" in the auto insurance industry—i.e., tactics employed by insurance companies to steer their insureds to or away from particular repair shops, without informing their insureds of their statutory right to choose. *See, e.g., Medine's Collision Ctr., LLC v. Progressive Direct Ins. Co.*, 199 So. 3d 38, 42 (La. App. 1st Cir. 2016) (referring to Louisiana's statute establishing an insured's right to choose his repair shop as the "anti-steering provision"); *Auto Body Fedn. of Empire State, Inc. v. Lewis*, 436 N.Y.S.2d 32 (N.Y. App. Div. 2d Dept. 1981) (stating that the New York statute prohibiting requirement in automobile policies that auto repairs be made in particular shop was enacted to protect the public, which includes independent auto body and repair shops, from "steering" tactics practiced by some automobile insurers).

22.    The above-referenced statutory framework makes clear that State Farm's intentional conduct towards Total Recon is contrary to the regulation in the State of Maryland.

7

*Continuation and Escalation of State Farm's*
*Intentional and Malicious Campaign Against Total Recon*

23.     On May 18, 2023, Total Recon sent State Farm a letter, via certified mail to its statutory resident agent the Maryland Insurance Administration ("MIA"), outlining its improper, actionable conduct against Total Recon and requesting that State Farm immediately "cease and desist from *any and all* efforts, specifically including, but not limited to, those identified in [the] letter, that improperly steer business away from Total Recon, tortiously interfere with Total Recon's business with its actual or potential clients, and/or defame Total Recon." Additionally, the letter served as a notice and request to State Farm to preserve documents relevant to Total Recon. *Id.* at PP. 2-8. The letter concluded with a request for a written confirmation by May 31, 2023 "that [State Farm has] taken all necessary steps to cease and desist from [its] actional conduct and preserve all documents and communications relating in any way to Total Recon as requested [therein]." *Id.* at PP. 8-9.

24.     State Farm did not respond to the May 18, 2023 letter by the requested deadline of May 31, 2023.

25.     Since sending the May 18, 2023 letter, Total has uncovered additional and even more troubling information regarding the extent of State Farm's actionable conduct against Total Recon, showing just how concerted, intentional, and malicious it is.

26.     For example, Total Recon has learned that State Farm:

      a.     Has classified Total Recon as an "Alternative Workflow" shop and is "escalating" calls from actual or potential customers of Total Recon, for the purposes of delaying, inconveniencing, intimidating, and/or improperly "steering" them away from Total Recon.

08/18/2023

b.    Has put Total Recon on State Farm's so-called "No List" and communicated said status to Total Recon's actual or potential customers, for the purpose of improperly steering them away from Total Recon for fear of having to pay out of pocket or encountering other issues.

c.    Has prepared a script for State Farm agents who receive communications from actual or potential customers of Total Recon, requiring the agents to improperly steer the insureds away from Total Recon by reciting:

> The repair facility may charge *more than* what State Farm has determined is *reasonable and necessary* to repair the vehicle. If this happens, you may be *personally responsible* for these additional charges.
>
> These charges may include, but are not limited to:
>
> - Repair charges for *unnecessary operations* and/or *unreasonable pricing* relative to the damage to your vehicle because of this loss.
> - Potential handling fees that are *not reasonable* to complete the estimate on your vehicle damage on your behalf.
> - Supplements where State Farm is unable to review damages or inspect the vehicle before the supplemental repairs began.
> - Rental charges – These delays could result in *additional rental.*

This is not information that is consistently told to State Farm's insureds when they go to other collision repair shops.

d.    Has written to Haleh Safaipour, who formed an agreement with Total Recon to have her vehicle repaired at Total Recon, on May 30, 2023, even before her claim was processed and an estimate was generated, stating as follows: "Total Recon may not agree with [the] estimate and any supplements to it. You may be personally responsible for the differences." The letter makes

9

08/18/2023

clear that State Farm's conduct is especially malicious since State Farm is aware that "[customers] have the right to select the repair facility of [their] choice to repair [their] vehicle." State Farm is attempting to unlawfully and improperly usurp that choice from its insureds to the financial and reputational detriment of Total Recon.

   e.    Is intentionally delaying processing claims for Total Recon customers.

27.    The above-referenced acts are independently improper in that they violate the Act.

28.    On June 7, 2023, Total Recon sent a Final Notice to State Farm, via electronic mail to State Farm's regional director and via certified mail to the MIA. In the June 7, 2023 letter, Total Recon summarized State Farm's additional actionable conduct that reveals the extent of State Farm's "concerted, intentional, and malicious actionable conduct, . . . now [giving] cause for seeking punitive damages against State Farm should this matter proceed to litigation." *See id.* The letter concluded as follows:

> Please provide written confirmation to me by **no later than Wednesday, June 14**, 2023 that State Farm has (1) removed the classification of Total Recon as an "Alternative Workflow" shop; (2) removed Total Recon from State Farm's so-called No-List; (3) has ceased using the above-referenced or similar language in its agents' script and letter to actual or potential clients of Total Recon; (4) has taken the necessary steps to cease and desist from all its actionable conduct described in the first letter and this letter; and (5) has taken the necessary steps to preserve all documents and communications relating in any way to Total Recon as requested in the May 18, 2023 letter.

*See id.*

29.    On June 14, 2023, Total Recon received via electronic mail a letter from a law firm retained to represent State Farm stating, "Put simply, State Farm denies your characterization of its actions, which are complaint with Maryland law, including Ann. Md. Code, Ins. § 10-503." Based on the substance of the letter, State Farm has not disputed any of Total Recon's contentions,

but has instead brazenly taken the position that their conduct is not unlawful and that it will continue engaging in this course of conduct. State Farm is wrong and Total Recon is entitled to relief.

## COUNT I
### (Tortious Interference with Contractual Relations)

30.     Total Recon adopts herein by reference paragraphs 1 through 29 above as if fully set forth herein.

31.     Total Recon entered into valid repair agreement with David Dochter, who was insured by State Farm, but rescinded after speaking with State Farm, which informed him that he could not use Total Recon; that utilizing Total Recon will require a separate and longer approval process; and that he had to use one of the shops that State Farm used more often or frequently, and recommended a specific shop to him.

32.     Upon information and belief, there are other State Farm customers that Total Recon has not yet been able to identify who had valid repair agreements with Total Recon. Total Recon should be able to obtain this information and identify additional customers through discovery.

33.     State Farm was aware of the valid agreements between Total Recon and these insureds.

34.     State Farm intentionally and willfully communicated to these insureds misrepresentations and falsehoods about Total Recon to induce them to breach or cancel their agreements with Total Recon. Such misrepresentations and falsehoods include, but not limited to:

    a.     That Total Recon charges out-of-pocket costs;

    b.     That utilizing Total Recon will require a separate and longer approval process;

    c.     That Total Recon is not on State Farm's "preferred list";

     d.     That Total Recon is not recommended

     e.     That the insured could not use Total Recon; and

     f.     That the insured had to use one of the shops that State Farm used more often or frequently.

35.     State Farm's statements were improperly made in violation of Md. Code Ann., Ins. § 10-503 and/or § 27-104, and/or were defamatory.

36.     State Farm's knowing and wrongful interference with the valid agreements between Total Recon and State Farm's insureds was accompanied by actual malice.

37.     State Farm's intentional, improper, and malicious conduct was without justification.

38.     As a result of State Farm's intentional, improper, and malicious conduct, the above-mentioned customers of Total Recon breached or cancelled their contract with Total Recon.

39.     As a result of State Farm's intentional, improper, and malicious conduct, Total Recon suffered significant damages, including, but not limited to, lost profits and actual harm to reputation.

WHEREFORE, Plaintiff Total Recon Auto Center, LLC respectfully requests that this Honorable Court enter judgment in its favor and against Defendant State Farm Insurance, in an amount which exceeds $75,000.00 in compensatory damages, punitive damages, pre- and post-judgment interest, and costs and such other and further relief as the Court deems just and proper.

## COUNT II
### (Tortious Interference with Prospective Advantage)

40.     Total Recon adopts herein by reference paragraphs 1 through 39 above as if fully set forth herein.

12

41.     State Farm launched an intentional, malicious campaign when it began making disparaging or misleading statements about Total Recon to its insureds who call State Farm and communicate that they want to use Total Recon, in an attempt to intimidate and steer them away from Total Recon. State Farm's remarks include, but not limited to:

       a.     That Total Recon charges out-of-pocket costs;

       b.     That utilizing Total Recon will require a separate and longer approval process;

       c.     That utilizing Total Recon will create "issues with [S]tate [F]arm" for the insured;

       d.     That Total Recon is not on State Farm's "preferred list";

       e.     That Total Recon is not recommended;

       f.     That Total Recon's repair plan would not be in line with State Farm's;

       g.     That Total Recon "may charge more than what State Farm has determined is reasonable and necessary to repair the vehicle."

       h.     That Total Recon may charge "[r]epair charges for unnecessary operations and/or unreasonable pricing relative to the damage to your vehicle because of this loss";

       i.     That Total Recon may charge "[p]otential handling fees that are not reasonable to complete the estimate on your vehicle damage on your behalf"; and

       j.     That Total Recon may charge "[s]upplements where State Farm is unable to review damages or inspect the vehicle before the supplemental repairs began."

13

42. State Farm's intentional, malicious campaign against Total Recon also include, but are not limited to:

    a.    Putting Total Recon on State Farm's so-called "No List" and communicating said status to its insureds who communicate that their shop of choice is Total Recon, for the purpose of improperly steering them away from Total Recon for fear of having to pay out of pocket or encountering other issues; and

    b.    Classifying Total Recon as an "Alternative Workflow" shop and repeatedly "escalating" calls from its insureds who communicate that their shop of choice is Total Recon, for the purpose of delaying, inconveniencing, intimidating, and/or improperly "steering" them away from Total Recon.

43. State Farm's conduct described above was in violation of Md. Code Ann., Ins. § 10-503 and/or § 27-104, and/or was defamatory.

44. State Farm's conduct described above lacked justification.

45. State Farm's conduct described above was accompanied by actual malice.

46. As a result of State Farm's intentional and improper conduct described above, prospective customers of Total Recon took their business to repair shops other than Total Recon. These were future business relationships which were likely to occur, absent the intentional and improper interference by State Farm. Such prospective customers of Total Recon who took their business elsewhere as a result of State Farm's intentional and improper conduct include, but are not limited to:

    a.       Nelson Sanabria, who became concerned about having to pay out-of-pocket expenses at Total Recon as a result of intentional misrepresentations by State Farm and decided to not utilize Total Recon; and

    b.       Caroline Mosher (Claim No. 46-49R8-79C), who, on May 17, 2023, cancelled her appointment at Total Recon scheduled for May 19, 2023 after speaking with State Farm, due to "issues with [S]tate [F]arm" regarding utilizing Total Recon.

47.    Further, as a result of State Farm's intentional and improper conduct, additional prospective customers of Total Recon will continue to take their business to repair shops other than Total Recon. State Farm insureds who call State Farm and communicate that Total Recon is their shop of choice are possible future relationships with Total Recon that are likely to occur, absent intentional and improper interference by State Farm.

48.    As a result of State Farm's intentional and improper conduct, Total Recon has suffered and will continue to suffer significant damages including, but not limited to, lost profits and harm to its reputation.

WHEREFORE, Plaintiff Total Recon Auto Center, LLC respectfully requests that this Honorable Court enter judgment in its favor and against Defendant State Farm Insurance, in an amount which exceeds $75,000.00 in compensatory damages, punitive damages, pre- and post-judgment interest, and costs and such other and further relief as the Court deems just and proper.

## COUNT III
### (Defamation *Per Se*)

49.    Total Recon adopts herein by reference paragraphs 1 through 48 above as if fully set forth herein.

50.    State Farm launched an intentional, malicious campaign when it began communicating disparaging remarks about Total Recon to its insureds, including, but not limited to, the following above-referenced individuals:

a.    Nelson Sanabria, who spoke with Total Recon in or about April 2023 via telephone;

b.    Tash Gohlke (Claim Nos. 2045S3-24B01 and 20-45S3-19L01), who spoke with Total Recon via phone and writing on April 12, 2023 and stated: "My wife just got home and mentioned the estimate from statefarm is REALLY low and as Total Recon is not in their "network" she's concerned about whether or not they'll pay for the repairs.";

c.    Inder Chawla (Claim Nos. 20-47F398T and 20-48B8-36S01), who spoke with Total Recon via phone on April 11, 2023 and indicated that State Farm told her about Total Recon's potential out of pocket costs;

d.    Raymond Irizarry, who spoke with Total Recon via phone on May 9, 2023 stating that State Farm advised him of the possible out of pocket expenses, that we are not on State Farm's "preferred list," and even advised him to go to International Collision Center, which is down the street from Total Recon;

e.    David Dochter, who spoke with Total Recon via phone on May 16, 2023 during which he stated "I'm sorry my insurance will not allow me to use your shop;"

f.    Caroline Mosher (Claim No. 46-49R8-79C), who spoke with Total Recon via phone and email on May 17, 2023, and stated "Unfortunately I will have

16

to cancel my appointment due to issues with state farm. Thank you for your time;"

g.     Ethan Karaus (Claim No. 09-49V547J), who spoke with Total Recon via phone on May 23, 2023, during which he stated "I just got a call from State Farm giving me a heads up that, since you guys aren't in their network of repair shops, there was a possibility that they may not cover the full cost of repairs. Could you talk to State Farm and then tell me about any charges that won't be covered before you do any work?;"

h.     Halef Safaipour, who spoke with Total Recon via phone and email on May 31, 2023.

51.    The disparaging statements communicated include, but are not limited to the following:

a.     That Total Recon charges out-of-pocket costs;

b.     That Total Recon's repair plan would not be in line with State Farm's;

c.     That Total Recon "may charge more than what State Farm has determined is reasonable and necessary to repair the vehicle."

d.     That Total Recon may charge "[r]epair charges for unnecessary operations and/or unreasonable pricing relative to the damage to your vehicle because of this loss";

e.     That Total Recon may charge "[p]otential handling fees that are not reasonable to complete the estimate on your vehicle damage on your behalf"; and

17

   f.    That Total Recon may charge "[s]upplements where State Farm is unable
         to review damages or inspect the vehicle before the supplemental repairs
         began."

52.    State Farm's statements were improperly made in violation of Md. Code Ann., Ins.
§ 10-503 and/or § 27-104, and/or were defamatory.

53.    The statements are defamatory *per se*—their injurious character to Total Recon is
self-evident given their disparagement of Total Recon's business reputation, character, and
integrity.

54.    These statements are false.

55.    State Farm was legally at fault in making these statements.

56.    State Farm made these statements negligently or with actual malice to injure Total
Recon's business, knowing they were false.

57.    As a result of these defamatory statements, Total Recon suffered significant
damages including, but not limited to, lost profits and harm to its reputation.

WHEREFORE, Plaintiff Total Recon Auto Center, LLC respectfully requests that this
Honorable Court enter judgment in its favor and against Defendant State Farm Insurance, in an
amount which exceeds $75,000.00 in compensatory damages, punitive damages, pre- and post-
judgment interest, and costs and such other and further relief as the Court deems just and proper.

Respectfully submitted,

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

By:        */s/ Eduardo S. Garcia*
Eduardo S. Garcia (CPF# 1412160305)
egarcia@steinsperling.com
(301) 354-8326 (facsimile)

        */s/ Flora K. Lee*
Flora K. Lee (CPF# 1912180011)
flee@steinsperling.com
(301) 354-8334 (facsimile)

1101 Wotton Parkway, Suite 700
Rockville, Maryland 20852
(301) 340-2020

*Attorneys for Plaintiff*
*Total Recon Auto Center, LLC*

19